**COLORADO INTERGOVERNMENTAL RISK SHARING AGENCY,**
Plaintiff–Appellee,

v.

**NORTHFIELD INSURANCE COMPANY,**
Defendant–Appellant.

No. 07CA0058.

Colorado Court of Appeals,
Div. II.

July 24, 2008.

Rehearing Denied Oct. 16, 2008.

**840**

Light, Harrington & Dawes, P.C., Steven
J. Dawes, Sophia H. Tsai, Denver, Colorado,
for Plaintiff–Appellee.

Montgomery, Kolodny, Amatuzio, & Dus-
babek, L.L.P., Todd L. Vriesman, Kevin F.
Amatuzio, Damian S. Stone, Denver, Colora-
do, for Defendant–Appellant.

Opinion by Judge BERNARD.

Defendant, Northfield Insurance Company
(Northfield), appeals the trial court's order
finding that Northfield could be apportioned
responsibility for the partial collapse of the
roof over the Salida Hot Springs Pool. In the
alternative, Northfield appeals evidentiary
and procedural issues, and the computation
of interest on the judgment. We reverse and
remand.

## I. Background

The City of Salida owned and operated a
hot springs swimming pool, located in an
enclosed building. The roof was supported
by wooden trusses, which had been installed

in 1981. In May 2001, the building's roof collapsed after a large snowstorm.

Salida had insured the building through plaintiff, Colorado Intergovernmental Risk Sharing Agency (CIRSA), Northfield, and Transamerica Insurance Group (TIG). Under the tiered policies, CIRSA was responsible for the first $250,000 of a loss, Northfield was responsible for coverage of losses between $250,000 and $1,000,000, and TIG was responsible for coverage of a loss above $1,000,000. CIRSA was also responsible for adjusting any claims.

After the collapse, CIRSA paid Salida over $1,000,000 to repair the roof. Northfield denied CIRSA's request for coverage for the loss. CIRSA then filed a lawsuit to recover $750,000 from Northfield, claiming that Northfield had breached its insurance contract with CIRSA.

Northfield contended that decay of some of the wooden trusses, produced by the swimming pool's damp environment, caused the collapse. Northfield then argued that it was not responsible to pay CIRSA because the insurance contract expressly excluded damage caused by:

3. a. Wear and tear;

   b. Rust, corrosion, fungus, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

   . . .

   g. Dampness or dryness of atmosphere, changes in or extremes of temperature, marring or scratching.

CIRSA claimed the weight of the snow caused the roof to collapse. Northfield responded that, even if the roof's collapse was caused by a combination of factors, it was still relieved from liability because the insurance contract contained an "anti-concurrent causation clause" (ACC). The ACC, which preceded the express exclusions quoted above, read:

We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

Northfield reasoned that, because one of the causes—the weight of the snow—was covered by the insurance contract, but the other—the decay of the wooden trusses—was expressly excluded from the insurance contract's coverage, the ACC relieved Northfield of its obligations under the insurance contract.

Before trial, the court concluded that the contract was "clear and unambiguous." Although the trial court agreed with Northfield that it would not be liable for any portion of the loss the jury attributed to the decay of the wooden trusses, the court rejected Northfield's argument that the ACC would relieve Northfield of its responsibility to pay CIRSA for any part of the loss the jury attributed to the weight of the snow. Rather, the court interpreted the ACC to allow for apportionment of loss between included and excluded causes.

At trial, the jury found the cause of the roof's collapse was ninety percent due to the weight of the snow, and ten percent due to wear and tear, rust, corrosion, decay, deterioration, and/or dampness of atmosphere. Based on the jury's apportionment, the trial court entered a judgment for CIRSA in the amount of $675,000 for Northfield's breach of the insurance contract.

Northfield appeals, contending that the ACC bars CIRSA's recovery. For reasons explained below, we agree.

## II. Standard of Review

The trial court's interpretation of an insurance contract is a question of law we review de novo. *Titan Indem. Co. v. Travelers Prop. Cas. Co.*, 181 P.3d 303, 306 (Colo. App.2007). Unless the contract is ambiguous, we enforce its plain language according to principles of contract interpretation, giving effect to the plain and ordinary meaning of its terms. Whether a contract is ambiguous is a question of law. *Id.* A contract is ambiguous where it is reasonably susceptible of more than one meaning. *Thompson v. State Farm Fire & Cas. Co.*, 165 P.3d 900, 901 (Colo.App.2007). "However, mere disagreement between the parties concerning the meaning of terms does not create an ambigu-

ity." *Id.* at 902. "Courts may neither add provisions to extend coverage beyond that contracted for, nor delete them to limit coverage." *Cyprus Amax Minerals Co. v. Lexington Ins. Co.,* 74 P.3d 294, 299 (Colo.2003).

■ The insured must demonstrate causation necessary to bring a loss within the limits of the insurance contract's coverage. *See Sylvester v. Liberty Life Ins. Co.,* 42 P.3d 38, 39 (Colo.App.2001); 7 *Couch on Insurance* § 101:60 (3d ed.2006). However, the insurer bears the burden of proving that a particular loss falls within an exclusion in the contract. *Massingill v. State Farm Mut. Auto. Ins. Co.,* 176 P.3d 816, 824 (Colo.App. 2007); 7 *Couch on Insurance* § 101:60. If a limitation or exclusion in a contract is unambiguous, that limitation or exclusion must be enforced. *State Farm Mut. Auto. Ins. Co. v. Mendiola,* 865 P.2d 909, 912 (Colo.App.1993).

## III.  Analysis

### A.  Efficient Proximate Cause Doctrine

■ Generally, whether an insurance contract covers a loss hinges on whether the proximate cause of the loss was a type of cause covered by the agreement. 7 *Couch on Insurance* § 101:39. The "efficient proximate cause" or "efficient moving cause" rule was applied by a division of this court in *Koncilja v. Trinity Universal Ins. Co.,* 35 Colo.App. 27, 528 P.2d 939 (1974). This rule provides that "when a loss is caused by the combination of both covered and excluded perils, the loss is fully covered by the insurance [contract] if the covered risk proximately caused the loss." *Tuepker v. State Farm Fire & Cas. Co.,* 507 F.3d 346, 356 (5th Cir.2007). "[I]n evaluating a loss, where there is concurrent causation, the 'efficient cause' (the one that sets others in motion) is the cause to which the loss is to be attributed." *Redstone Corp. v. Fire Ins. Exchange,* 715 F.Supp. 300, 301 (D.Colo.1989).

"It is widely recognized that the parties can 'contract out' of this general causation rule, as long as their agreement does not violate public policy." 7 *Couch on Insurance* § 101:45. "[I]f [an insurance contract] requires that a loss be solely, or directly and independently, caused by a particular peril, coverage will not apply if any cause other than the insured perils contributes to the loss." *Id.* § 101:47.

### B.  Anti–Concurrent Causation Clause

■ Here, the jury found that the roof collapsed because of a combination of factors: the weight of the snow; and wear and tear, rust, corrosion, decay, deterioration, and/or dampness of atmosphere. Thus, Northfield carried its burden of proving that an exclusion contained in the contract applied, which raises the question whether the ACC bars CIRSA's recovery. *See* David P. Rossmiller, *Katrina in The Fifth Dimension: Hurricane Katrina Cases in the Fifth Circuit Court of Appeals, in* New Appleman on Insurance: Current Critical Issues in Insurance Law 71, 86 (2008)(Rossmiller *in* New Appleman). An ACC "denies coverage whenever an excluded peril and a covered peril combine to damage a dwelling or personal property." *Leonard v. Nationwide Mut. Insurance Co.,* 499 F.3d 419, 425 (5th Cir.2007).

■ In *Kane v. Royal Ins. Co.,* 768 P.2d 678, 685 (Colo.1989), our supreme court found that the "efficient moving cause" rule outlined in *Koncilja* was rendered inapplicable when an insurance contract contained an ACC. There, the ACC stated that the insurer "shall not be liable for loss ... caused by, resulting from, contributed to, or aggravated by ... flood." *Id.* at 680. Based on this language, the supreme court determined that, where the insured's loss was in any way due to an excluded cause, such as a flood, the insurer was not obligated to pay the insured, even if there were other possible causes of the loss. The court concluded that, to enforce the efficient moving cause rule in light of this language, would have required the court to "rewrite a contract." Because "well-settled principles of law" prevent courts from rewriting contracts for the parties, the plain language of the agreement was given its intended effect, and the insured was denied any recovery. "[T]he 'efficient moving cause' rule must yield to qualifying or enlarging words agreed to by the parties and included in the insurance [contract]." *Id.* at 685; *accord Thompson,* 165 P.3d at 904 (noting that the effect of an ACC similar to the one here

would be to bar recovery even when an excluded cause acts "concurrently or in any sequence" with other causes).

Although *Kane* established the principle we apply here, it examined an ACC containing substantially different language than the language with which we are faced in this case. The language of the ACC here is commonly found in standard insurance contracts drafted by the Insurance Services Office. *See* David J. Rosenberg, Kenneth M. Portner & Matthew Stool, *Insurance Industry Woes in the Aftermath of Hurricanes Katrina and Rita*, 73 Def. Couns. J. 141, 152 (Apr.2006). Thus, we look for guidance to other jurisdictions that have directly addressed the interaction between the efficient proximate cause rule and an ACC employing this same language.

For example, in *TNT Speed & Sport Center, Inc. v. American States Insurance Co.*, 114 F.3d 731, 732–33 (8th Cir.1997) (collecting cases), the insurance contract at issue excluded

> loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

The Eighth Circuit Court of Appeals determined the insurance contract's language reflected the intent of the parties to avoid the application of the efficient proximate cause doctrine and, therefore, coverage was properly denied when an excluded cause contributed to the loss. *See also Tuepker*, 507 F.3d at 356; *Leonard*, 499 F.3d at 430; *Schroeder v. State Farm Fire & Cas. Co.*, 770 F.Supp. 558, 560 (D.Nev.1991); *State Farm Fire & Cas. Co. v. Bongen*, 925 P.2d 1042, 1045 (Alaska 1996) (collecting cases); *Alf v. State Farm Fire & Cas. Co.*, 850 P.2d 1272, 1277 (Utah 1993).

"[A]lmost all courts that have considered this issue have found that efficient proximate cause is merely a common law default rule" which can be eliminated by contract. Rossmiller *in* New Appleman at 95; 7 *Couch on Insurance* § 101:45 ("The majority of jurisdictions permit the parties to an insurance contract to contract out of the efficient proximate cause doctrine.")(collecting cases).

Four jurisdictions disagree. *See Julian v. Hartford Underwriters Ins. Co.*, 35 Cal.4th 747, 757, 27 Cal.Rptr.3d 648, 110 P.3d 903, 909–10 (2005) ("the efficient proximate cause rule ... override[s] contrary [contract] language"); *Western Nat'l Mut. Ins. Co. v. University of N.D.*, 643 N.W.2d 4, 14 (N.D.2002)(concurrent clause language not enforceable by statute); *Safeco Ins. Co. v. Hirschmann*, 112 Wash.2d 621, 627–31, 773 P.2d 413, 416–17 (1989) (refusing to allow insurance contract to circumvent the efficient proximate cause rule); *Murray v. State Farm Fire & Cas. Co.*, 203 W.Va. 477, 488–91, 509 S.E.2d 1, 12–16 (1998) (same).

Our independent review of the insurance contract here leads us to conclude that the ACC in the insurance contract is unambiguous, and we must therefore apply the plain meaning of its terms. Other courts reviewing similar language have concluded it is not ambiguous, and we agree with their reasoning. *See Tuepker*, 507 F.3d at 353–56 (collecting cases); *Leonard*, 499 F.3d at 430–31.

■ We also agree with the trial court's conclusion that, where an insurance contract contains an ACC, the clause must be applied in lieu of the efficient proximate cause rule.

However, we disagree with the trial court's analysis of the effect of the ACC when included and excluded causes are both proved. Rather than allow for apportionment of covered and excluded causes, we conclude that the ACC unambiguously bars any recovery if an excluded cause contributed to the loss. This conclusion is consistent with our reading of *Kane* and the cases from other jurisdictions we have cited above that reflect the prevailing view.

In reaching its conclusion, the trial court stated that interpreting the ACC as we have here would make the coverage in the insurance contract illusory. We respectfully disagree.

■■ Exclusions impermissibly render coverage illusory when they "in effect allow the insurer to receive premiums when realistically it is not incurring any risk of liability." *O'Connor v. Proprietors Ins. Co.*, 696 P.2d 282, 285 (Colo.1985). Courts must be cau-

tious in applying this rule, however, to avoid frustrating the purposes for coverage. *Horace Mann Ins. Co. v. Peters,* 948 P.2d 80, 86 (Colo.App.1997). If an insurance contract covers some risk that the parties can reasonably anticipate, it is not illusory. *See Schwartz v. State Farm Mut. Auto. Ins. Co.,* 174 F.3d 875, 879 (7th Cir.1999).

We conclude that the exclusion here does not render the coverage illusory because the insurance contract covers some risk that the parties can reasonably anticipate. For example, had the jury found that the cause of the roof's collapse was only the weight of the snow, the insurance contract would have required Northfield to pay CIRSA. Because the record does not contain evidence to establish that it is probable that the causes excluded in the insurance contract would apply in any case, let alone every case, we cannot conclude that Northfield was accepting CIRSA's premiums even though its risk of incurring liability was unrealistically low. *See Leonard,* 499 F.3d at 431 (insurance contract containing an ACC was not rendered illusory by an exclusion of flood damage when the insurance contract covered wind damage generated by a hurricane unaccompanied by storm-surge flooding).

#### IV. Waiver

CIRSA contends that, because Northfield argued to the jury at trial that the roof's collapse was caused only by the decay of the trusses, Northfield's acceptance of the verdict form apportioning causes of the loss indicates that Northfield agreed that the collapse was caused by *either* an excluded cause *or* by a covered cause, and not by concurrent or sequential causes. Thus, CIRSA argues, Northfield waived its right to argue on appeal that the collapse was caused by concurrent or sequential causes, triggering the application of the ACC. We are not persuaded, and we conclude that the applicability and effect of the ACC are appropriately before us for our review.

Northfield consistently argued to the trial court that, if the collapse was caused by covered and excluded events, then the ACC relieved Northfield of any payment obligation because these causes were either concurrent or sequential. Further, based on the record before us and the plain language of the verdict form, we conclude that, by "apportion[ing] the cause or causes of the claimed property damage," the jury found that both causes contributed to the collapse, and did not find that the roof's collapse was caused *either* by one cause *or* by the other.

Because we conclude that the trial court erred in awarding damages against Northfield, we reverse the trial court's judgment and remand to the trial court to enter judgment for Northfield. Thus, we need not address Northfield's remaining contentions.

The judgment is reversed, and the case is remanded for entry of judgment for Northfield.

Judge TAUBMAN and Judge FURMAN concur.